# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

EDITH M. WILLIAMS,

     Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

     Defendant.

Case No.: 3:18-cv-00175-LRH-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 13, 20

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 13.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF No. 20.)

After a thorough review, it is recommended that Plaintiff's motion be granted; the Commissioner's motion be denied; and, that the Commissioner's decision be reversed and remanded for the calculation and award of benefits.

## I. BACKGROUND

On June 19, 2014, Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning January 17, 2014. (Administrative Record (AR) 155-158.) The application was denied initially and on reconsideration. (AR 67-70, 73, 74-76.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 78-79.) ALJ Patrick Hannon held a hearing on November 21, 2016. (AR 34-45.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On December 7, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 17-28.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-12.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ erred in rejecting a portion of the opinion of consultative examining orthopedist, Theodore Georgis, Jr., M.D.—that she was precluded from stooping—without providing specific and legitimate reasons for rejecting that portion of the opinion that were supported by substantial evidence in the record (the ALJ instead found Plaintiff could engage in occasional stooping); and (2) the ALJ impermissibly ignored significant probative evidence, including Plaintiff's physical therapy records and a record that she underwent a medial branch block injection for her lumbar spine disorder.

The Commissioner, on the other hand, argues: (1) that substantial evidence supported the ALJ's findings concerning Plaintiff's RFC, including the ability to occasionally stoop because the ALJ's interpretation of the medical evidence was rational;  (2) the ALJ provided a detailed discussion of Plaintiff's treatment records contemporaneous with the physical therapy treatments, and the ALJ is not required to discuss every piece of evidence; and (3) while the ALJ was not aware of and did not acknowledge that plaintiff received a medial branch block injection, this does not undermine the ALJ's conclusion that Plaintiff largely received conservative treatment for her allegedly disabling symptoms.

///

## II. STANDARDS

**A. Disability Process**

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular pat relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740

F.3d 519, 528 (9th Cir. 2014). If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id.* Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id.* For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id.* The Grids may only be used where they "completely and accurately represent a claimant's limitations." *Tackett*, 180 F.3d at 1101. If a claimant suffers from non-exertional limitations, the ALJ may not apply the Grids because they are only based on strength factors. *See* 20 C.F.R. Part 404, Subpart 2, App. 2, § 200.00(e); 20 C.F.R. §§ 404.1569a, 416.969a (defining non-exertional limitations as those that do not directly affect a claimant's muscular strength). If a claimant's limitations are exertional and non-exertional, the Commissioner must consult the Grids first, and if the person is disabled under the Grids, there is no need to look

at the effect of non-exertional limitations; however, if the person is not disabled under the grids, the non-exertional limitations must be examined separately. *See Lounsberry v. Barnhart*, 468 F.3d 1111, 1115-16 (9th Cir. 2006).

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the

reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since the alleged onset date of January 17, 2014. (AR 22.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: osteoarthritis/degenerative disc disease of the lumbar/lumbosacral/cervical spine without clinical evidence of myelopathy or lumbar radiculopathy. (AR 22.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 25.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform sedentary work as defined in 20 C.F.R. §404.1567(a), except with no climbing of ladders, ropes or scaffolding or concentrated exposure to working near hazards; no overhead work; no crawling; and, occasional climbing of stairs and ramps, stooping, kneeling and crouching; and, frequently balancing and performing fine-fingering tasks. (AR 25-26.)

1    The ALJ then concluded Plaintiff was able to perform her past relevant work as a circuit

2    court clerk II/court clerk/judicial assistant II, which is sedentary work and does not require the

3    performance of work-related activities precluded by her RFC. (AR 28.) Therefore, the ALJ found

4    Plaintiff not disabled from the alleged onset date through the date of the decision.

5    **B. Stooping**

6        At issue is the ALJ's determination that Plaintiff was capable of performing sedentary work

7    involving occasional stooping when consultative examining orthopedist Dr. Georgis opined she

8    was precluded from stooping.

9        **1. Evaluation of Medical Opinions in Social Security Cases**

10       In Social Security cases, "[c]ourts 'distinguish among the opinions of three types of

11   physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do

12   not treat the claimant (examining physician); and (3) those who neither examine nor treat the

13   claimant (nonexamining physicians).'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)

14   (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "'As a general rule, more weight

15   should be given to the opinion of a treating source than to the opinion of doctors who do not treat

16   the claimant.'" *Id.* "[T]he opinion of a treating physician is thus entitled to greater weight than that

17   of an examining physician, [and] the opinion of an examining physician is entitled to greater

18   weight than that of a non-examining physician." *Id.* (citation omitted).

19       "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must

20   state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of

21   Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or

22   examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it

23   by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*,

759 F.3d at 1012 (citation and quotation marks omitted). "[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id*. (citation omitted).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831.

**2. Functional Assessments and the ALJ's Conclusion Plaintiff Could Occasionally Stoop**

According to Social Security Ruling (SSR) 85-15, stooping involves "bending the body downward and forward by bending the spine at the waist[.] SSR 85-15, 1985 WL 56857, at *7.[1]

On July 28, 2014, non-examining State agency consultant N. Shibuya, M.D., made the initial determination Plaintiff could occasionally stoop. (AR 50, 52.) At the reconsideration stage approximately three months later, S. Lau, M.D., also concluded Plaintiff could engage in occasional stooping. (AR 62, 64.)

---

[1] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

Over a year and a half later, Plaintiff underwent a consultative orthopedic examination with Dr. Georgis on July 13, 2016. (AR 523-27.)  Dr. Georgis noted that on examination Plaintiff's lumbar spine range of motion for flexion was 45 degrees, with 90  being normal. (AR 525.) Her diagnoses included severe osteoarthritis of the lumbar spine with scoliosis and chronic pain with right sciatica, and neck pain with probable degenerative disc disease. (AR 526.) He assessed her as having the functional capacity to lift/carry ten pounds occasionally; to stand/walk for two to four hours in an eight-hour day; to sit up to six hours in an eight-hour day; and, she could not climb, stoop, crouch, crawl, kneel or overhead reach. (AR 527.) He also filled out a medical source statement indicating her ability to do work related activities reflecting these limitations. (AR 517-520.)

The ALJ based Plaintiff's RFC limiting her to sedentary work in large part on the opinions of Dr. Georgis, but when it came to postural limitations, including the ability to stoop, the ALJ gave more weight to the non-examining State agency consultants' assessments. (AR 26.)

In support of the ALJ's decision to adopt less restrictive postural limitations than those advanced by Dr. Georgis, the ALJ cited the following: a negative EMG/nerve conduction study on May 7, 2014, showing no fasciculation or denervation; consistent observation of normal gait and normal neurological signs in examinations; by 2016, she routinely denied sciatica, denied gait abnormality, denied tingling and numbness, denied spinal instability, denied loss of strength, and loss of use of an extremity; she reported her pain was controlled "okay" with medication; the October 15, 2015 and October 27, 2015 EMG/nerve conduction studies were again negative for cervical radiculopathy, peripheral neuropathy, and lumbar radiculopathy. (AR 26.) The ALJ went on to state that Dr. Georgis' conclusions that Plaintiff "could '**never**' stoop, kneel or crouch ... are markedly inconsistent with the claimant's repeated acknowledgements of being able *to drive*, to

cook, to bathe and dress, and to clean her house[.]" (AR 26, emphasis original.) The ALJ went on to state: "Especially driving, the undersigned notes, cannot be reasonably performed by a person completely unable to stoop or crouch, and the claimant repeatedly acknowledged driving[.]" (AR 26.)

### 3. Analysis

Plaintiff argues that the ALJ did not set forth specific and legitimate reasons supported by substantial evidence when he rejected Dr. Georgis' opinion that Plaintiff was precluded from stooping but ignored clinical findings regarding Plaintiff's forward flexion, i.e., forward bending.

The Commissioner, on the other hand, argues that the ALJ's interpretation of the evidence was rational and supported by substantial evidence and must be upheld. The Commissioner points out that while Plaintiff had limited forward flexion in the back at her examination with Dr. Georgis, he also found she had negative straight leg raising test bilaterally without pain, full motor strength, normal muscle bulk and tone, and no atrophy, indicating that while she had severe osteoarthritis in the back and neck pain due to degenerative joint disease, it did not necessarily imply she could not stoop. Following that exam, she was found with a normal range of motion, normal coordination and gait, and normal neurological signs. Additionally, the Commissioner contends that the ALJ properly pointed out inconsistencies between Plaintiff's allegations of disabling symptoms and her admitted activities.

### a. Clinical Findings Regarding Lumbar Spine Range of Motion

As Plaintiff points out, the ALJ did not mention the clinical findings regarding Plaintiff's range of motion in the lumbar spine which seem to more directly correlate with the ability to stoop, i.e., bend forward and down from the waist.

Early on in the records, on February 20, 2014, Dr. Won-Yee Cheng stated that Plaintiff's lumbar range of motion was within functional limits. (AR 285.) On March 10, 2014, a physical therapy record indicates that in flexion on standing her fingertips were eight inches from the floor. (AR 281.) Laura J. Ankrum, D.O., noted limited flexion of the lumbar spine on September 16, 2014. (AR 348.) On October 21, 2014, her lumbosacral spine exhibited abnormalities. (AR 343.) On July 29, 2015, on examination of the paravertebral muscles by Madhava Narala, M.D., spasm and tenderness were noted on both sides, as well as severe scoliosis. (AR 458.) The same notation was indicated at her visit with Dr. Narala on August 28, 2015. (AR 455.) She was referred to and eventually went to LAGS Spine and Sportscare for pain management. The records from the pain management specialists consistently indicated pain with lumbar spine range of motion testing, abnormal lumbar spine range of motion, and lumbar spine flexion (forward) of only 30 degrees. (AR 461, 466, 472, 476, 481, 489, 493, 498, 504, 507, 537, 543, 552, 556, 561.)

Her physical therapist's records, which the ALJ did not mention, also discussed impairment in her range of motion. (AR 628.) When she was discharged, the therapist indicated Plaintiff had significant impairments in range of motion, strength and overall intolerance for functional activities in thoracic and lumbar regions. (AR 444, 628.) She was assessed at functional status stage two, which indicated she would have, among other things, extreme difficulty performing usual work or household activities, and extreme difficulty driving for one hour, and a little bit of difficulty putting on her shoes and socks. (AR 631.) Her rehabilitation potential was described as guarded due to the severity and chronicity of her pain symptoms. (AR 442.) While she increased her range of motion in some areas, overall her function had decreased secondary to her pain and symptoms. (AR 622.)

Her imaging showed severe degenerative changes in the lumbar spine and severe scoliosis. (AR 286, 289, 298-301, 486-87.) In addition, her medical records consistently indicate that her pain was aggravated by bending/stooping. (AR 460, 464, 469, 475, 479, 488, 492, 498, 503, 506, 536, 541, 550, 555, 559.)

In conclusion, the ALJ's finding that Plaintiff could occasionally stoop because of some "normal" clinical findings is not supported by substantial evidence in the record. Instead, the record contains evidence that Plaintiff was consistently assessed as having limited range of motion in the lumbar spine.

### b. Pain Controlled by Medication

The ALJ states as a reason for rejecting Dr. Georgis' opinion on postural limitations that Plaintiff's pain was controlled "okay" on medication, but this is not consistent with the records. She did report the pain was "okay" on her current medications on September 16, 2014, but this was not the norm. (AR 346.) In March of 2014, she rated her pain as an eight on a scale of one to ten. (AR 281.) On March 24 and April 7, 2014, she reported the Baclofen was not helping. (AR 279, 280.) On October 21, 2014, she saw Heather Miner, M.D., and reported taking about six hydrocodone a day. (AR 339.) She was referred for physical therapy as well as pain management. (AR 343.) On January 29, 2015, she indicated she did not like taking the hydrocodone, and the baclofen did not work well. (AR 514.)

On November 3, 2015, she reported to her physical therapist that her pain was "not too bad," but the next week, she reported an overall increase in pain. (AR 626.)  She continued to report being in a lot of pain at the remaining November and December 2015 physical therapy sessions. (AR 624-626.) On December 29, 2015, and January 14, 2016, her pain was a six on a scale of one to ten, but on January 19, 2016 and February 2, 2016, she reported she was in a lot of

pain. (AR 623-24.) Upon her discharge from physical therapy her pain was largely unchanged. (AR 442.)

On August 2, 2016, Christiana Okonkwo, NP, indicated Plaintiff's medications were not as effective. (AR 553.) On September 15, 2016, Jenny Tran, NP, increased her Norco prescription noting that Plaintiff might consider switching to Percocet if the Norco was insufficient. (AR 545.) At that visit, it was stated that Plaintiff's first medical branch block had been completed without follow up, and a second was ordered since Plaintiff had been treated conservatively without improvement. (AR 545.) On October 12, 2016, she was prescribed Percocet in place of Norco. (AR 538.)

In sum, the ALJ's rejection of Dr. Georgis' opinions regarding Plaintiff's postural limitations because her pain was controlled, and she was doing "okay" on medication is not supported by substantial evidence in the record.

### c. Nerve Conduction/EMG Studies

In support of the less restrictive postural limitations, the ALJ also cited the negative EMG/nerve conduction study on May 7, 2014, and the October 15 and 27, 2015 EMG/nerve conduction studies were negative for cervical radiculopathy, peripheral neuropathy, and lumbar radiculopathy.

The May 7, 2014, EMG did not show signs of active denervation, but contrary to the ALJ's statement, the fasciculations were documented through the study. (AR 273.) Dr. Todd Devere, who performed the EMG/nerve conduction, noted that Plaintiff's major problem was low back pain with bilateral calf pain triggered by prolonged standing or walking. (AR 274.) He suspected the back and leg pain were related to lumbosacral stenosis. (AR 274.) She was diagnosed with right-

15

1   sided sciatica, scoliosis, and chronic non-malignant pain. (AR 274.) She was advised to follow up

2   with neurology. (AR 273-74.)

3        The October 15, 2015 EMG/nerve study was conducted with respect to complaints of pain

4   and paresthesia in her right arm and numbness and tingling in both upper extremities. (AR 532.)

5        The October 27, 2015 EMG/nerve conduction study was performed relative to her

6   complaints of low back pain radiating into both feet, with numbness and tingling in both lower

7   extremities (which contradicts the ALJ's statement that she did not report numbness and tingling).

8   (AR 528.) The results were an abnormal left nerve conduction study and normal right nerve

9   conduction and normal bilateral needle EMG exam. (AR 528.) There *was* electrodiagnostic

10  evidence of left peroneal neuropathy (with motor and sensory fibers affected) localized at the knee.

11  (AR 528.) There was no electrodiagnostic evidence of peripheral polyneuropathy or lumbar

12  radiculopathy on that study. (AR 528.)

13       The EMG/nerve study results do not seem to have a direct bearing on Plaintiff's ability to

14  stoop. Moreover, the ALJ acknowledged earlier in the decision that the EMG/nerve studies were

15  either normal or *"non-diagnostic*." (AR 24.) In any event, some of the "normal" study results do

16  not detract from the doctors' other findings concerning the significant issues with Plaintiff's back.

17                    **d. Clinical Findings**

18       The ALJ also based his rejection of Dr. Georgis' postural limitations on clinical

19  observations of normal gait and neurological signs, and denial of sciatica, gait abnormality,

20  tingling and numbness, spinal instability, loss of strength and use of an extremity.

21       The ALJ did not explain how these findings had an impact on her ability to stoop.

22  Additionally, the records reflect that she did frequently report experiencing tingling and numbness;

23  she frequently experienced muscle aches; she did admit to and was diagnosed with sciatica on

16

multiple occasions; she consistently reported significant pain; she experienced diminished sensation; her imaging studies showed significant degenerative changes in the spine; she exhibited tenderness on palpation in the spine and facet and SI joints; she was eventually given a Toradol injection for pain and a medial branch block injection, and was ordered a walker and a cane.

Specifically, on January 17, 2014, she complained of tingling in her legs and was diagnosed with right-sided sciatica. (AR 294.) On January 21, 2014, she described fatigue and achiness in her muscles, and again was diagnosed with right-sided sciatica. (AR 292.) At that time, she had slightly diminished sensation on the right side, and was referred to neurology. (AR 291-92.) On January 27, 2014, she had fatigue in her muscles secondary to the fasciculations in her calves. (AR 301.) On February 6, 2014, the x-ray of her lumbar spine was discussed as showing severe scoliosis and severe degenerative changes to the lumbar spine, and she was referred to physiatry. (AR 289.) The following day, she still complained of achy muscles secondary to the fasciculations. (AR 289.) On February 20, 2014, she did not have fixed numbness or tingling but reported episodic burning and numb pain down the right leg. (AR 285.)

The lumbar spine MRI showed significant degenerative changes with severe neuroforaminal narrowing. (AR 286, 299-301.) On April 7, 2014, she complained of constant muscle aches in both legs. (AR 279.) She was referred to neurology for an evaluation. (AR 279.) On May 7, 2014, she was diagnosed with right-sided sciatica, scoliosis, and chronic non-malignant pain. (AR 274.)

On September 16, 2014, she was described as having severe scoliosis with sciatica radiating to the right leg. (AR 346.) That day some atrophy was noted in the right leg, and her gait had a slight right-sided limp. (AR 348.) She was assessed with lumbago with sciatica and lumbar spondylosis. (AR 348.) On October 21, 2014, she reported some numbness down the right leg with

prolonged walking. (AR 339.) Her lumbosacral spine exhibited abnormalities. (AR 342.) She was assessed with lumbar radiculopathy. (AR 342.) She was referred to physical therapy and pain management. (AR 343.)

At a January 29, 2015 examination, she was positive for back pain, joint pain and myalgias. (AR 514.) On July 29, 2015, she had lumbar spine spasm and tenderness as well as severe scoliosis. (AR 458.) There was spasm and tenderness of the lumbar spine again on August 28, 2015. (AR 455.)

Plaintiff started treating with the pain management specialists on September 16, 2015. (AR 507.) EMGs of the bilateral upper and lower extremities were ordered, as well as a medial branch block injection. (AR 508.) On October 1, 2015, she had tenderness to palpation over the lumbar and thoracic paraspinals and facet and SI joints. (AR 504.) At the EMG on the bilateral upper extremities on October 15, 2015, decreased sensation in her right second through fifth digits was noted. (AR 532.) While that EMG study was normal, a cervical MRI was recommended to rule out myelopathy. (AR 532.)

Plaintiff began physical therapy on October 19, 2015. (AR 627.) At that time she had tingling into her arms, and numbness and tingling in the right leg. (AR 627.) She indicated she had to sit down at times due to her right leg getting numb, and had a couple of falls secondary to this. (AR 627.)

The EMG study on the bilateral lower extremities was performed on October 27, 2015. (AR 528.) The doctor noted Plaintiff had complained of low back pain radiating into both feet, and numbness and tingling in both lower extremities. (AR 528.) She had decreased sensation to light touch in the left dorsum of the foot. (AR 528.)

She had the medial branch block injection on October 30, 2015. (AR 495.) On November 10, 2015, she reported to her physical therapist she had more pain since having the injection. (AR 626.) As of her November 17, 2015 physical therapy session there had been no significant change in her symptoms. (AR 624.)

On November 30, 2015, she had tenderness in the spine. (AR 493.) At that point, her diagnosis was spondylosis without myelopathy or radiculopathy in the lumbar region, and a cervical spine MRI was ordered. (AR 494.)

On December 1, 2015, her physical therapist stated that she had increased her strength and had improved function, but she would benefit from continued physical therapy. (AR 625.)

She was seen by the pain management specialist on December 28, 2015, relative to her complaints of lower back pain. (AR 488.) She had tenderness in the lumbar and thoracic spine. (AR 490.)

The results from the MRI of the cervical spine on January 5, 2016, revealed moderate to severe bilateral neural foraminal stenosis. (AR 486-87.) She was seen by the pain management specialists again on January 28, 2016, for complaints of lower back pain radiating bilaterally to the legs, as well as right arm pain. (AR 481.) Her diagnoses included spondylosis without myelopathy or radiculopathy in the lumbar spine, and cervical spondylosis. (AR 482.) Physical therapy was ordered again, and a second medical branch block was ordered since she had already been treated conservatively without lasting results, though it ended up being deferred. (AR 482, 557.) At her February 2, 2016 physical therapy session she reported being in a lot of pain with more cramping throughout the paraspinals. (AR 623.)

On February 24, 2016, she was seen for neck and low back pain, and was given a Toradol injection for pain and a walker was ordered. (AR 477-78.) At her March 4, 2016 physical therapy

session she reported feeling much better that day, but in her March 7, 2016 discharge summary it was stated that she had significant impairments in range of motion, strength and overall tolerance for functional activities in the thoracic and lumbar regions. (AR 443.)

She was seen on March 28, 2016 for lower back pain radiating to the right leg, and neck pain radiating to the bilateral upper extremities. (AR 469.) Her medications were refilled, and a cane was ordered. (AR 472.) She was seen for lower back and neck pain again on April 28, 2016, May 25, 2016, and June 21, 2016. (AR 460, 464, 559.)

When she saw Dr. Georgis for the consultative exam on July 13, 2016, she reported numbness in the right leg with standing or walking; she had fallen in the past when she walked too far; and, she was using a walker outside for safety and a cane in the house at that point. (AR 523.) She was able to walk a few steps without the walker or cane. (AR 524.) She had decreased sensation globally over the right upper extremity and right lateral calf. (AR 526.) Dr. Georgis' diagnoses included right-sided sciatica. (AR 526.)

She was seen by Christiana Okonkwo, N.P., on August 20, 2016, for right arm and lower back and neck pain. (AR 550.) Pain, tingling, loss of sensation, burning/freezing, and weakness in hands and feet were indicated. (AR 551.)

She saw Jenny Tran, N.P., on September 15, 2016, for lower back pain. (AR 541.) The description of the pain included numbness and burning, as well as pinching and pins and needles, and tingling. (AR 541.) She admitted sciatica and weakness, and again admitted tingling and numbness. (AR 542.) A medial branch block injection was ordered again, noting the first had been administered without follow up. (AR 544-45.) Her Norco prescription was increased. (AR 545.)

She saw the pain management specialist again on October 12, 2016, for bilateral low back pain, and was started on Percocet. (AR 538.)

1    In sum, in citing to some "normal" clinical findings, the ALJ ignored many instances where

2 these symptoms were present and did not account for the consistent findings of severe spinal issues

3 throughout the record.

4                                    **e. Straight Leg Test**

5    The Commissioner mentions straight leg tests being negative as a basis for finding Plaintiff

6 could stoop occasionally. This was not a reason asserted by the ALJ for rejecting the stooping

7 preclusion.  The court may only affirm agency action on grounds invoked by the ALJ. *See Marsh*

8 *v. Colvin,* 792 F.3d 1170, 1172 (9th Cir. 2015) (citation omitted). In any event, the majority of the

9 records that reflect this test being done show a positive straight leg test in both supine and sitting

10 positions (*see* AR 348, 461, 466, 471, 476, 481, 489, 493, 498, 504, 507, 537, 544, 552, 556, 561),

11 though the straight leg test was negative both in supine and sitting positions at her consultative

12 examination with Dr. Georgis on July 13, 2016 (AR 525).

13                                    **f. Daily Activities**

14    The ALJ found that a preclusion from stooping was "markedly" inconsistent with

15 acknowledgements of being able to drive, cook, bathe, dress and clear her house, especially driving

16 which the ALJ said could not reasonably be performed by a person completely unable to stoop or

17 crouch.

18    If an ALJ is going to cite daily activities as a basis for rejecting a physician's opinion, the

19 ALJ must provide details of what those activities involved. *Trevizo v. Berryhill,* 871 F.3d 664, 676

20 (9th Cir. 2017). Absent specific details of the activities, "those tasks cannot constitute substantial

21 evidence." *Id.* In *Popa v. Berryhill,* 872 F.3d 901 (9th Cir. 2017), the Ninth Circuit concluded the

22 ALJ's decision was not supported by substantial evidence where the ALJ rejected the doctor's

23 opinion that the claimant was not likely to maintain regular attendance at work because it

21

conflicted with activities of daily living including attending church, watching television and shopping for groceries, without providing any explanation as to how those activities translated to the ability to maintain regular attendance at work. *Popa*, 872 F.3d at 907.

The records from LAGS Spine and Sportscare contain a social history section in the left margin of the record which contains a category for "ADL" or activities of daily living. (*See e.g.* AR 497.) In each of the records from this provider, it lists the activities of cleaning the home, able to drive, able to cook, and able to bathe/dress. In each of the records from this provider, the response is indicated as yes, though there is no further detail about the extent of her ability to engage in these activities. The ALJ also provided no discussion about other evidence in the record that reveals the extent of Plaintiff's ability to perform these activities.

In mid-2014, the records indicate Plaintiff reported she could not drive home because of the pain. (AR 284-85.)

She reported to Dr. Cheng on April 7, 2014, that she was able to tolerate about two-to-three hours of doing errands outside the house, at which point the pain was so severe she would need to lie down. (AR 279.) On August 28, 2015, there is a note that she was unable to go to her doctor's appointments due to severe back pain and she requested a "handy ride." (AR 454.) She reported to her physical therapist that she did not like to drive on her medication. (AR 627.) The physical therapist also indicated she would have "extreme difficulty" driving for one hour. (AR 631.)

Moreover, Plaintiff stated in her adult function report on July 21, 2014, that she could put her clothes on, "but it hurts to *bend* to tie shoes." (AR 201 (emphasis added).) She had to shower fast because of pain in standing, and it was hard to *bend* to prepare a bath. (AR 201.) In addition, she said that it was hard to dry her hair because *bending* over the sink would hurt. (AR 201.) Standing to cook could be very difficult, and she could use the toilet but there was difficulty getting

up and down. (AR 201.) She prepared top ramen, spam and rice, canned soups and frozen dinners.
(AR 202.) She could sweep and mop *once a week*, and she did laundry for ten minutes *every two
weeks*. (AR 202.)  She would visit friends once a month, with her friend picking her up. (AR 204.)
She did not go anywhere *on a regular basis*. (AR 204.) She sometimes could not complete her
errands because of her pain. (AR 205.) She also testified at her hearing that it hurt if she had to
*bend* over to lift things. (AR 43.)

The ALJ's determination that Plaintiff's restriction on stooping was contradicted by her
ability to engage in daily activities is not supported by substantial evidence in the record.

### g. Conclusion

In sum, the court finds that the ALJ erred in rejecting Dr. Georgis' opinion that Plaintiff
was precluded from stooping because the ALJ did not provide specific, legitimate reasons for
adopting the opinions of the non-examining State consultants that were supported by substantial
evidence in the record.

## C. Disregard of Significant, Probative Evidence

Plaintiff argues that the ALJ also erred in ignoring significant and probative evidence—
Plaintiff's physical therapy records, and the record of her medial branch block injection.

The Commissioner seems to admit the ALJ did not specifically acknowledge or discuss
Plaintiff's physical therapy records, but instead argues that the ALJ reviewed the record as a whole
and provided a detailed discussion of the treatment records that were contemporaneous with the
physical therapy records. (AR 28 at 14.) As to the medial branch block injection, the Commissioner
concedes that the ALJ did not acknowledge Plaintiff received the medial branch block injection,
but maintains Plaintiff still was not offered or recommended spinal surgery or more aggressive
treatment. (AR 28 at 15.)

In Social Security proceedings, the ALJ need not discuss all evidence presented, but must explain why "significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); SSR 96-8p, 1996 WL 374184, at * 5 ("The RFC assessment must be based on *all* of the relevant evidence in the case record[.]").

The court finds the ALJ failed to explain why he rejected significant probative evidence: the physical therapy records and medial branch block injection record. The physical therapy records are significant probative evidence because they shed light on Plaintiff's functional abilities, and in particular her lumbar flexion which has a bearing on the ability to stoop.

While the ALJ stated he was unable to confirm whether the recommended medial branch nerve block was actually performed, the record reflects that Plaintiff did in fact undergo a medial branch block injection on October 30, 2015. (AR 495.) A second medial branch block injection was initially deferred and then re-ordered on September 15, 2016. (AR 545.) The medial branch block injection is also significant probative evidence, because it was ordered after it was noted Plaintiff had already been treated conservatively without lasting results, and it goes to the ALJ's statement that Plaintiff only received conservative treatment.

Therefore, the ALJ erred in ignoring this evidence.

**D. Reversal and Remand for Calculation and Award of Benefits**

Plaintiff argues that the credit-as-true test should be applied, and the matter should be reversed and remanded for the calculation and award of benefits. She asserts that there are no outstanding issues to be resolved; and, if Dr. Georgis' opinions are credited as true, the ALJ would be required to find the claimant disabled. Alternatively, she asks the court to remand for further proceedings.

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (citation and quotation marks omitted); *see also Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017), *as amended* January 25, 2018 (The credit-as-true "rule itself permits, but does not require, a direct award of benefits on review..."). "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded for further proceedings." *Revels,* 874 F.3d at 668 (citation and quotation marks omitted).

"An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon,* 880 F.3d at 1044 (citation omitted). That is to say, "[w]hen the ALJ denies benefits and the finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Id*. at 1045 (citation omitted).

A case *may* be remanded for the calculation and award of benefits if several criteria are met. First, the ALJ must have "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Leon*, 880 F.3d at 1045. Second, the record must be fully developed such that further administrative proceedings would serve no useful purpose. *Id*.; *see also Revels*, 874 F.3d at 668. When these two conditions are satisfied, the improperly discredited evidence is credited as true, and the court must determine whether the ALJ would be required to find the claimant disabled on remand and whether "on the record taken as a whole, there is no doubt as to disability." *Leon*, 880 F.3d at 1045; *Revels*, 874 F.3d at 668.

The court will now address the credit-as-true criteria in the context of this case.

First, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Georgis' opinion that Plaintiff was precluded from stooping that were supported by substantial evidence in the record thereby satisfying the first credit as true factor.

Second, the court must address whether the record has been fully developed and if further administrative proceedings would serve any useful purpose.

The record contains Plaintiff's relevant treatment records from January of 2014, when she alleges her condition became so severe she had to stop working, through October of 2016. It also includes the reports of the State agency consultants at the initial and reconsideration stages, and the consultative examination report and medical source statement from Dr. Georgis. There is also Plaintiff's adult function report as well as her hearing testimony. Finally, the record contains the testimony of the VE at the hearing.

"The second step of the credit-as-true analysis requires us to determine whether the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps." *Leon*, 880 F.3d at 1046-47 (citation omitted). In other words, the court must address whether questions remain about the extent to which Plaintiff's symptoms rendered her unable to stoop.

The court discussed above the abundant evidence in the record supporting Dr. Georgis' opinion that Plaintiff should be precluded from stooping. When Dr. Georgis saw Plaintiff, she reported that she was in constant pain that was worse with bending. (AR 523.) Her lumbar range of motion on flexion was 45 degrees, with 90 degrees noted as normal. (AR 525.) The majority of the clinical findings from her treatment records reveal abnormality in lumbar flexion, and that her condition was aggravated by bending. Plaintiff's own testimony and adult function report corroborate that she had difficulty with activities that required bending. Therefore, the court finds

1    the record has been thoroughly developed as to this issue, and the second credit-as-true factor is

2    satisfied.

3         The court must now consider whether the ALJ would be required to find the claimant

4    disabled on remand if Dr. Georgis' opinion on stooping is credited as true, and whether there is

5    any doubt as to disability based on the entirety of the record.

6         The Commissioner argues that even if the court credits Dr. Georgis' opinion on preclusion

7    of stooping, it does not necessarily mean Plaintiff was disabled since her past job as a circuit court

8    clerk II did not require stooping as generally performed according to the DOT. (ECF No. 28, citing

9    DOT 243.362-010.)

10        Crediting Dr. Georgis' opinion, Plaintiff would be precluded from stooping. The VE

11   testified that while the DOT actually contains occupations that it defines as *not* requiring stooping,

12   in his experience of almost 36 years he did not believe that to be realistic. (AR 41.) He went on to

13   state: "So, every sedentary job is going to require at least a little stooping every now and then."

14   (AR 41.) A "little" stooping would be more consistent with occasional stooping. The VE was asked

15   whether a limit to no stooping would preclude sedentary work, including Plaintiff's past relevant

16   work, and the VE responded that it would. (AR 41.)

17        The Commissioner acknowledges the VE's testimony that this is not a realistic

18   interpretation of the occupation's functional requirement, but argues that when there is a conflict

19   between the DOT and VE testimony, the ALJ must assess whether there is a reasonable basis for

20   relying on VE testimony rather than the DOT. (ECF No. 28 at 12.) The Commissioner contends

21   the ALJ never had to determine whether to accept this testimony because the ALJ had found

22   Plaintiff was not precluded from stooping. (AR 25-26.)

23

1    The court sees no basis for remanding for the ALJ to confront this issue again because the

2    VE's testimony is also consistent with SSR 85-15, which states that stooping "is required to do

3    almost any kind of work[.]" SSR 85-15, 1985 WL 56857, at * 7.

4    SSR 96-9P provides guidelines for evaluating the ability to do less than a full range of

5    sedentary work, that would apply to Plaintiff's scenario. The ruling states that "[a]n ability to stoop

6    *occasionally*; i.e., from very little up to one-third of the time, is required in most unskilled

7    sedentary occupations." SSR 96-9P, 1996 WL 374185, at *8 (emphasis added).  Similar to SSR 85-

8    15, SSR 96-9P provides that "[a] *complete* inability to stoop would significantly erode the unskilled

9    sedentary occupational base and a finding that the individual is disabled would usually apply, but

10   restriction to occasional stooping should, by itself, only minimally erode the unskilled

11   occupational base of sedentary work." *Id*. (emphasis original). The ruling advises that

12   "[c]onsultation with a vocational resource may be particularly useful for cases where the individual

13   is limited to less than occasional stooping." *Id*.

14   Here, the ALJ did consult with a vocational resource, who testified unequivocally that a

15   claimant who could *not* stoop would be precluded from sedentary work. Crediting Dr. Georgis'

16   opinion that Plaintiff was precluded from stooping as true, the VE's testimony would require the

17   ALJ to find Plaintiff disabled. It makes no sense to remand this matter to the ALJ to solicit VE

18   testimony in accordance with SSR 96-9P, when that testimony was already given.

19   Finally, the court finds there is no serious doubt based on the record as a whole that Plaintiff

20   is in fact disabled. Her imaging studies revealed significant and severe degenerative changes in the

21   spine. Her testimony, function reports and the treatment notes from her doctors and the

22   consultative examination are consistent in reporting she suffered in severe pain that was not

23   alleviated by medications, physical therapy, or injections.

Therefore, the Commissioner's decision should be reversed, and this matter should be remanded to the ALJ for the calculation and award of benefits.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order:

(1) **GRANTING** Plaintiff's motion (ECF No. 13);

(2) **DENYING** the Commissioner's cross-motion (ECF No. 20); and

(3) **REVERSING** the Commissioner's decision and **REMANDING** to the ALJ for the calculation and award of benefits.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: February 1, 2019.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE